RECEIVED

SEP 7 2021

CLERK, U.S. DISTRICT CLERK
WESTERN DISTRICT TEXAS
BY_____

**FILED**

SEP 0 7 2021

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
                    DEPUTY CLERK

Criminal No. _____, Orig.

In The District Court of the United States

for the District of West Texas

Dale J. Richardson

*Pro Se Applicant,*

(Crime Victim)

v.

**1:21 CV0794RP**

Officer Blevins,

Officer Jones,

Immigration Control and Enforcement,

The Department of Homeland Security,

United States Judge Lewis T. Babcock

United States Judge Christine M. Arguello

United States Magistrate judge Kristen L. Mix

United States Magistrate Judge Gordon P. Gallagher

Office of the Clerk, United States District Court of Colorado

The United States District Court for the District of Colorado

Virgil Thomson,

OWZW LLP,

Chantelle Eisner,

Annie Alpin,

Cheryl Giesbrecht,

The Attorney General of Canada,

Justice Pentney,

The Federal Court of Canada.

*Respondents.*

(The Accused)

Criminal Complaint Pursuant to Article 13 of the Convention Against Torture and Rule 3 of the Federal Rules of Criminal procedure and;

Ex Parte Motion for Relief Pursuant to 18 U.S.C. § 3771 (3) (d), article 1, 2, and 13 of the UN Convention against Torture, and Rule 3 of the Federal Rules of Criminal Procedure

DALE J. RICHARDSON
 *Detainee*
AURORA ICE PROCESSING CENTER.
3130 North Oakland Street,
Aurora, CO 80010
303 361-6612
unity@dsrkarisconsulting.com

## PARTIES SERVED FOR INFORMATIONAL PURPOSES

**To:**                          Attorney General of the United
                                 States
                                 Criminal Division
                                 950 Pennsylvania Ave NW
                                 Washington D.C. 20530-0001


**And:**                         The Supreme Court of the United
                                 States
                                 Office of the Clerk
                                 Washington D.C. 20543-0001


**And:**                         UNHCR
                                 1800 Massachusetts Ave NW
                                 Suite 500
                                 Washington D.C. 20036

# TABLE OF CONTENTS

PARTIES SERVED FOR INFORMATIONAL PURPOSES .................................................................. 3

CRIMINAL COMPLAINT PURSUANT TO ARTICLE 13 OF THE CONVENTION AGAINST
TORTURE AND RULE 3 OF THE FEDERAL RULES OF CRIMINAL PROCEDURE AND AN
EX PARTE MOTION FOR RELIEF PURSUANT TO 18 U.S.C. § 3771(d) (3) TO THE UNITED
STATES DISTRICT COURT IN THE DISTRICT OF WESTERN TEXAS: ....................................... 5

JURISDICTION ....................................................................................................................................... 5

GROUNDS ................................................................................................................................................. 6

MATERIALS RELIED ON ................................................................................................................... 32

RELIEF SOUGHT ...................................................................................................................................33

CONCLUSION ........................................................................................................................................ 56

CRIMINAL COMPLAINT PURSUANT TO ARTICLE 13 OF THE
CONVENTION AGAINST TORTURE AND RULE 3 OF THE
FEDERAL RULES OF CRIMINAL PROCEDURE AND AN EX
PARTE MOTION FOR RELIEF PURSUANT TO 18 U.S.C. §
3771(d) (3) TO THE UNITED STATES DISTRICT COURT IN
THE DISTRICT OF WESTERN TEXAS:

The Pro Se Applicant Dale J. Richardson hereby submits a Complaint pursuant to
article 13 of the Convention against Torture and Rule 3 of the federal Rules of
Criminal Procedure.  The Pro Se Applicant Dale J. Richardson also hereby submits in
the same document a motion for relief pursuant to 18 U.S.C. § 3771 (d) (3), and
article 2, 5 (1)(a)(b)(2)(3), 13 of the Convention Against Torture to the United States
District Court in the District of Western Texas.

## JURISDICTION

The Pro Se Applicant invokes Article 13 of the Convention Against Torture, in
conjunction with Article 2, 5, 6 and any other relevant articles of the same and Rule
3 of the Federal Rules of Criminal Procedure to use this document and its attached
appendices and any documents referenced therein to make a criminal complaint of
torture which is an inalienable right under the Convention against Torture. The
Court is compelled by the Convention against Torture to hear the complaint and the
Pro Se Applicant is invoking the Court's jurisdiction under article 2, and 13 of the
Convention against Torture. Rule 3 is also invoked in light of the Convention

against Torture to set the complaint before a judge, with article 13 superseding and hindrances from Rule 3 of the Federal rules of Criminal procedure. After the complaint, the Pro Se Applicant invokes this Court's jurisdiction for a motion for relief pursuant to 18 U.S.C. § 3771 (Crime Victim's Rights), and the United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, Article III Section 3 Clause 1 and Amendment IV, V, VIII of the United States Constitution, and the Declaration of Independence.

# GROUNDS

Convention against Torture

Article 1

1. For the purposes of this Convention, the term "torture" means any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person for such purposes as obtaining from him or a third person information or a confession, punishing him for an act he or a third person has committed or is suspected of having committed, or intimidating or coercing him or a third person, or for any reason based on discrimination of any kind, when such pain or suffering is inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity. It does not include pain or suffering arising only from, inherent in or incidental to lawful sanctions.

2. This article is without prejudice to any international instrument or national legislation which does or may contain provisions of wider application.

Article 2

1. Each State Party shall take effective legislative, administrative, judicial or other measures to prevent acts of torture in any territory under its jurisdiction.

2. No exceptional circumstances whatsoever, whether a state of war or a threat of war, internal political instability or any other public emergency, may be invoked as a justification of torture.

3. An order from a superior officer or a public authority may not be invoked as a justification of torture.

Article 3

1. No State Party shall expel, return ("refouler") or extradite a person to another State where there are substantial grounds for believing that he would be in danger of being subjected to torture.

2. *For the purpose of determining whether there are such grounds, the competent authorities shall take into account all relevant considerations* including, where applicable, the existence in the State concerned of a consistent pattern of gross, flagrant or mass violations of human rights.

Article 4

1. Each State Party shall ensure that all acts of torture are offences under its criminal law. The same shall apply to an attempt to commit torture and to an act by any person which constitutes complicity or participation in torture.

2. Each State Party shall make these offences punishable by appropriate penalties which take into account their grave nature.

Article 5

1. *Each State Party shall take such measures as may be necessary to establish its jurisdiction* over the offences referred to in article 4 in the following cases:

(a) *When the offences are committed in any territory under its jurisdiction* or on board a ship or aircraft registered in that State;

(b) *When the alleged offender is a national of that State*,

(c) When the victim is a national of that State if that State considers it appropriate.

2. *Each State Party shall likewise take such measures as may be necessary to establish its jurisdiction over such offences in cases where the alleged offender is present in any territory under its jurisdiction* and it does not extradite him pursuant to article 8 to any of the States mentioned in paragraph I of this article.

3. *This Convention does not exclude any criminal jurisdiction exercised in accordance with internal law*

Article 13

Each State Party shall ensure that any individual who alleges he has been subjected to torture in any territory under its jurisdiction has the right to complain to, and to have his case promptly and impartially examined by, its competent authorities. Steps shall be taken to ensure that the complainant and witnesses are protected against all ill-treatment or intimidation as a consequence of his complaint or any evidence given.

18 U.S.C. § 3771

(d) Enforcement and limitations.

(1) Rights. The crime victim or the crime victim's lawful representative, and the attorney for the Government may assert the rights described in subsection (a). A person accused of the crime may not obtain any form of relief under this chapter [this section].

(3) Motion for relief and writ of mandamus. The rights described in subsection (a) shall be asserted in the district court in which a defendant is being prosecuted for the crime or, if no prosecution is underway, in the district court in the district in which the crime occurred. The district court shall take up and decide any motion asserting a victim's right forthwith. If the district court denies the relief sought, the movant may petition the court of appeals for a writ of mandamus. The court of appeals may issue the writ on the order of a single judge pursuant to circuit rule or the Federal Rules of Appellate Procedure, unless the litigants, with the approval of the court, have stipulated to a different time period for consideration. In deciding such application, the court of appeals shall apply ordinary standards of appellate review. The court of appeals shall take up and decide such application forthwith within 72 hours after the petition has been filed. In no event shall proceedings be stayed or subject to a continuance of more than five days for purposes of enforcing

this chapter [this section]. If the court of appeals denies the relief sought, the reasons for the denial shall be clearly stated on the record in a written opinion.

*Rule 3. The Complaint*

*The complaint is a written statement of the essential facts constituting the offense charged. Except as provided in Rule 4.1, it must be made under oath before a magistrate judge or, if none is reasonably available, before a state or local judicial officer. Since 18 U.S.C. § 3771(d)(3) provides for the victim of crime to assert a motion for relief in the district in which the crime occurred, and that there is a right to a proceeding without unreasonable delay, when coupled in conjunction with article 2, 3, 4, 5 and13 of the Convention against Torture, the court must permit the complaint and the motion in the same document, as to prevent acts of torture as the treaties of the United States are also the supreme laws of the land, and must not be struck down by any federal statute. Since there is no known case law applying the these laws, and treatise together, this is an action that is setting precedent and must be heard and argued before a court to make a decision on the motion. The detention of the Pro Se Applicant in the custody of those who have tortured him has created an unreasonable delay in the proceedings as rogue agents of the Department of Homeland Security have tortured the Pro Se Applicant and are continuing to obstruct him and hinder him from making a complaint and initiating proceedings. That is the unreasonable delay and coupled with the fact that he is being subjected to punishment and obstruction arising from his complaint of*

*torture, article 13 is violated and the court has an obligation under article 2 to prevent acts of torture.*

The Pro Se Applicant is currently being subjected to severe mental pain and suffering (torture) arising from the obstruction of justice perpetrated by a number of rogue Immigration Control and Enforcement Officers and Aurora Ice Processing Center owned and operated by GEO Group Inc.. The Pro Se Applicant has been denied materials for court where he is seeking relief for his infant daughter who has been tortured because of his political opinion. Her punishment and torture is torturing the Pro Se Applicant. Obstruction of Justice is an unlawful sanction and it is blatantly torture under the convention. The Pro Se Applicant is being obstructed from reporting federal treason in conjunction with United States Citizen Robert A. Cannon who is also a resident of Texas from reporting treason, as it requires at least 2 witnesses to report treason. It is the duty of every American to report treason or allow the persons attempting to report treason every opportunity to present their case as treason is an offense of such great magnitude that the founding fathers defined it in the Constitution.  The Pro Se Applicant is being obstructed from reporting the mismanagement of the COVID emergency. The pro Se Applicant has also been subjected to Torture by ICE Officer Blevins, Torture by the CBP officers, and obstruction of justice by a number of actors both American and Canadian working in concert.

The pro Se Applicant is also being obstructed from reporting torture, conspiracy to commit treason, terrorism, and from presenting evidence of treason with United States citizen Robert A. Cannon.

On July 20, 2021 Circuit Judges Holmes, Matheson, and Eid of the 10th Circuit abused their position as circuit court judges to deny a writ of mandamus. Their actions in conjunction with the rogue agents of the District Court of Colorado demonstrate that they seek to build a world without freedom. The writing is on the wall for those who believe the masonic adage Solve et Coagula – who seek to build a world without freedom. On June 23, 2021 the Pro Se Applicant served a motion titled On Petition for Writ of Certiorari in the Supreme Court of the United States to U.S. Magistrate Judge Gordon P. Gallagher and the District Court of Colorado. Rather than properly filing the motion with the action subject to the certiorari, the court sent the motion to the Supreme Court of the United States where it was returned to the Pro Se Applicant as a rejected Writ of Certiorari 3 days after the petition was filed. On June 29, 2021 Michael Duggan sent 2 letters of rejection for the materials sent with the certiorari and other letters sent previously. The motion was unlawfully rejected by Mr. Duggan on July 2nd after the petition was filed on June 29, 2021. Duggan rejected the motion purportedly for being a writ of Certiorari. It is indisputably clear that the rogue agents of the Supreme Court were disposing of evidence because the motions and other materials were sent back with the original packaging inside of the mail. This was clearly done to keep evidence out of the Supreme Court.

This was necessary as the motion clearly demonstrated that the conditions of the Writ of Mandamus before the 10th Circuit were being met. With the motion on the Court record, it would be problematic for the 10th Circuit especially since it predicted punishment from the 10th Circuit. It also gave the corrupt agents in the 10th Circuit reason not to give the Pro Se Applicant oral arguments as requested for the Mandamus, as he would have made those arguments in the hearing and referenced the 3300 page appendices leaving the judges virtually no room to deny the Mandamus. The weak reasoning by the judges is more egregious because they knew that the Pro Se Applicant was being obstructed and oral arguments were necessary. In addition they pulled the torture quote far out of context and ignored the obvious long train of evidence and torture that the Pro Se Applicant was subjected to on both sides of the border. The panel officially violated the Convention against Torture and disregarded mentions of treason and the Invariable Pursuit of the Object from the court record. The panel of judges wrote an order that looked like it was written by a child. That was the only thing that they could have done because if they addressed the issues in the petition they would have buried themselves. The judges are clearly conspirators and need to be investigated.

United States Magistrate Judge Gordon P. Gallagher used the rules of the Court to shut out evidence of numerous crimes and the Invariable Pursuit of the Object which includes treason. By virtue of his position as a United States Magistrate Judge gives him the utmost responsibility out of all persons named in this motion. Magistrate Judge Gordon P. Gallagher incorrectly and deliberately applied the

motion for relief as a civil matter in an order dated June 15, 2021. This allowed the Pro Se Applicant to remain obstructed, tortured and allowed the Invariable Pursuit of the Object to continue with impunity. When presented with that volume of evidence and the gravity of the allegations, the public interest dictated that the matters be brought to light especially when treason is being alleged. Magistrate Judge Gordon P. Gallagher demonstrated actions consistent with a traitor to the United States of America. Magistrate Judge Gordon P. Gallagher demonstrated a pattern of behavior in stating that Jaime Naranjo-Herrera had to cure his deficiency for his motion for relief under 18 U.S.C. § 3771 as a civil matter under 28 U.S.C. § 1915. This is a clear indication that United States Magistrate Judge Gordon P. Gallagher is corrupt. The Magistrate Judge is using the rules of the court to prevent the enforcement of 18 U.S.C. § 3771 and prevent the investigation of corrupt officials.

On July 13, 2021 The Pro Se Applicant appeared before Immigration Judge Caley for a review of the credible fear determination by the Asylum officer. The Asylum officer was made aware that the Pro Se Applicant was tortured by the agents of DHS in order to make the statement. The Asylum officer refused to consider that testimony in blatant violation of the Convention against Torture. When the Pro Se Applicant raised this argument before the Immigration judge, he stated that he did not have the jurisdiction and that he could only speak about what happened in Canada. The Immigration judge also refused to accept the evidence from the Pro Se Applicant even though the purpose of a review is to present evidence to substantiate

a person's claim. The Pro Se guide provided by the Rocky Mountain Immigration Advocacy Network (RIMAN) substantiates the assertion of the Pro Se Applicant. The Immigration judge also stated that he did not have jurisdiction to deal with treason, this may be true as he is part of an administrative body. However, he cannot ignore someone who states that he is presenting evidence of treason. No American citizen or alien domiciled in the United States can ignore treason, as the very act is an act of misprision of treason and giving aide and comfort to the enemies of the United States allowing it to go unpunished. The Pro Se Applicant was not given any opportunity for due process and there was no representative from DHS at the hearing after over 3500 pages of evidence was presented to Officer Alexander including the 3300 pages of evidence presented to the CBP officers at the Sweetgrass MT point of entry, which they tortured the Pro Se Applicant to remove. The Immigration Court in Aurora CO, refused to take the evidence when the Pro Se Applicant sent it by kite in at the Aurora ICE processing Center, thereby violating his right to due process purporting that an Immigration Judge ordered the Pro Se Applicant to not bring the evidence because it was not needed.

On July 19, 2021 Officer Blevins and an unknown ICE officer of Asian descent spoke with the Pro Se Applicant and returned a grievance sent to the agents of ICE at the Aurora ICE Processing Center, asking them to forward the materials attached to the grievance to Washington for their superiors to review. Of note there were 5 affidavits that outlined what took place at the Sweetgrass, MT point of entry. The affidavits demonstrated that there was torture, obstruction of justice and

elements of treason that were enacted by Officer Scott and other CBP agents. This gives compelling evidence based on the testimony of the Pro Se Applicant and the witnesses of the events. An 8 year old child was present to witness the crimes committed. This means that the evidence used by the Department of Homeland Security was obtained by torture and were the product of criminal activity. There is no law in the United States that sanctions the torture of a person entering the United States, and it was a blatant violation of the eighth amendment and the Convention against Torture. Blevins also brought a Canadian passport form for the Pro Se Applicant to fill out and the Pro Se Applicant indicated to him that he has a valid passport and that he wanted to contact his consulate and confirm with them what needed to be done as Blevins could not answer the questions put to him by the pro se applicant. The Pro Se Applicant mentioned to Blevins that his country is going to execute him for treason.

On July 26, 2021 Officer Blevins came and spoke with the Pro Se Applicant regarding filling out passport forms when the Pro Se Applicant has a valid Canadian passport issued April 23, 2021 and is valid until 2031. There were a number of issues raised in conversation with Blevins this day and previously, and Blevins could not answer the questions put forth to him by the Pro Se Applicant. Blevins did not give the Pro Se Applicant time to get a response from his consulate and was served papers for non- compliance. The passport forms has a clear warning on it for misrepresentation, fraud and other things. In the earlier conversation on July 26, 2021, Officer Blevins stated that he would bring a warning for non-

compliance later that day and would bring one each week until the Pro Se Applicant would be taken to federal prison for non-compliance. Later that day Blevins returned with the notice of non-compliance. The Pro Se Applicant stated to Blevins that he is afraid of him and wants nothing to do with him and told him that he has complained of crimes committed by Blevins. Blevins left and returned with the notice of non-compliance.

On July 26, 2021 the Pro Se Applicant reported Officer Blevins to the Detention reporting line who said that they would forward his complaint to DHS headquarters. He also mentioned that Jaime Naranjo-Herrera witnessed Blevins' intimidation and coercion. Naranjo was informed on July 29, 2021 that he has additional charges added to his immigration hearing.

On July 27, 2021 The Pro Se Applicant sent a letter to the Consulate General of Canada in Denver and the Canadian Embassy in Washington DC outlining his concerns regarding his treatment by Blevins and other officers of ICE. The information also contained affidavits of the witnesses to the torture of the Pro Se Applicant by the CBP officers on April 26, 2021 after he asked for protection under the Convention against Torture. A copy of the letter was also sent to ICE along with a grievance directed to Officer Jones, the Officer in charge of the Aurora ICE Processing Center ICE agents. The letter requested that the consulate investigate the treatment of the Pro Se Applicant and Blevins intimidation and coercion.

On July 27, 2021 Prothonotary Mirelle Tabib of the Federal Court of Canada sent orders to the Pro Se Applicant to direct him to have a response for the Case

Management of T-1367-20 where he is suing the Attorney General of Canada for the terrorism, torture and other crimes sustained at the hands of the Royal Canadian Mounted Police (RCMP) and their failure to protect the Pro Se Applicant from the same. The Federal Court of Canada is aware that the Pro Se Applicant is currently being obstructed and tortured by a Defendant in T-1404-20. However the presiding Judge in the motion for T-1404-20 along with Chantelle Eisner, Virgil Thomson of OWZW, Annie Alpin, and Cheryl Giesbrecht for the Attorney General of Canada used the courts to unlawfully take advantage to the torture and obstruction that agents of ICE and agents of the Aurora ICE Processing center subjected him to. These coordinated actions furthered the torture of the Pro Se Applicant and his daughter and allowed the Canadian terrorists who victimized United States citizen Robert A. Cannon to go unpunished. They were all shielding terrorist activity, with the commission of the crime being in Canada and the United States. On July 23, 2020 a terrorist attack took place in North Battleford Saskatchewan that victimized Robert A. Cannon, United States citizen who is currently residing in Texas. The known suspected terrorists are, Cst. Reid of the RCMP, Linda Hebert, Raymond Hebert and Kimberley Richardson. There were numerous other RCMP officers and other unauthorized parties present. The details of the terrorist attack are in the material served on the court for No. 20-1815 in the Supreme Court of the United States for the Writ of Certiorari. The same materials were submitted to this court with the Petition for the Writ of Habeas Corpus placed before United States

Magistrate Judge Gordon P. Gallagher. Every person that has denied these materials unlawfully are accessories after the fact to the foregoing terrorist activity.

On July 28, 2021 before 6 am Officer Jones came in to deliver a grievance form to the Pro Se Applicant and asked if the Pro Se Applicant wanted to speak to him. The Pro Se Applicant came out to speak to him. Officer Jones refused to protect the Pro Se Applicant from the persons he complained to citing policy even after the statute was quoted to him. Officer Jones refused to investigate the torture at the border by the CBP agent stating that his office only dealt with removals in direct contradiction from the executive office of removals letter from Washington DC that stated that the Denver field office has the issue in a letter dated July 13, 2021. Jones also knew that the statement used by the Department of Homeland Security was a product of torture that it contained perjury by the CBP officers and still continued to use it. Jones directed the CBP officer to the OIG and other departments in the face of criminal activity by rogue agents of DHS. Jones told the pro Se Applicant that he did not have to fill out the passport forms after ICE spoke to the Consulate.

On July 28, 2021 the Pro Se Applicant heard a conversation with his mother Agatha Richardson and an agent from the Consulate General of Canada in which the agent told Agatha that ICE stated that the Pro Se Applicant requested the passport forms and Agatha had to correct her and stated that Blevins told the Pro Se Applicant that he had to fill out the forms and threatened him with prison if he didn't comply.

This demonstrates that Blevins intimidated and coerced the Pro Se Applicant based on a lie.

On August 2, 2021 Magistrate Judge Kristin L. Mix sent an order directing applicant to cure deficiencies to the Pro Se Applicant who is a victim of crime. She purported to not understand if the Pro Se Applicant was making claims under a habeas corpus when she stated "Most importantly, it is not clear whether Applicant is asserting habeas corpus claims pursuant to 28 U.S.C. § 2241 or conditions of confinements under some other statutory authority." She further goes on to state "this distinction is important because the nature of the action will determine the appropriate forms that must be used." The nature of the claim was clearly stated in the Jurisdiction paragraph where the statute is clearly outlined and the previous paragraph. Of note, a clerk or clerks in the office of the clerk for the District Court continue to improperly file the motion under 18 U.S.C. § 3771 as a civil matter when it is clearly a criminal title.

The Pro Se Applicant was not informed of the calls made by Emily Price, Case Management registry agent for the Federal Court of Canada. Emily Price was calling to advise the Pro Se Applicant of the motion scheduled for June 10, 2021 in which he is seeking interlocutory and other relief under the Convention against Torture. ICE is a respondent in the matter and has been obstructing justice.

On August 5, 2021 United States Judge Lewis T. Babcock dismissed the motion for relief as moot, purporting that it was part of the petition for the writ of Habeas Corpus, when it was clearly made pursuant to 18 U.S.C. § 3771 as stated in the

jurisdiction. The same judge dismissed the Ex Parte Petition for Writ of Habeas Corpus for failing to cure the deficiencies when there was over 3500 pages of evidence outlining terrorism, torture and federal treason tied to the mismanagement of the COVID emergency.

On August 16, 2021 Judge Lewis T. Babcock dismissed the Ex Parte Motion for Relief pursuant to 18 U.S.C. § 3771 case No. 1:21-cv-02183-GPG without contemplating the jurisdiction under article 13 of the Convention against Torture, nor the public importance of persons attempting to report treason.

On August 16, 2021 Judge Christine M. Arguello dismissed Ex Parte Motion for Relief pursuant to 18 U.S.C. § 3771 case number 1:21-cv-02208-GPG. The verbiage of her order was almost identical to the order made by Judge Babcock. She completely ignored the convention against torture, and the clerk filed a criminal matter as civil. The improper filing of the motion and the subsequent handing over the file to Magistrate judge Gordon P. Gallagher demonstrate a complete disregard for the rights of the Pro Se Applicant.

On June 29, July 2, 7, and 14, Michael Duggan sent letters purporting to reject documents for a writ of certiorari. On June 29, 2021, a letter was sent confirming that the Petition in fact was filed on June 23, 2021 and docketed June 29, 2021 as No. 20-1815. The motion submitted with the petition was unlawfully rejected by Mr. Duggan as a reading of the motion clearly outlines if as such after it demonstrates that the 10th circuit had compelling reason to issue the writ of mandamus, but they delayed it to allow the immigration court time to violate the

rights of the Pro Se applicant and give the Masonic agents of ICE opportunity to unlawfully remove the Pro Se applicant from the United States. It is indisputably clear that the actions of all of these actors are deliberately working in concert. The obstruction of the motion allowed for the furtherance of the torture of the Pro Se Applicant and allowed the mismanagement of the COVID emergency to continue unreported. The obstruction is also an attempt to murder the Pro Se applicant as there is a possibility he will be murdered upon return to Canada to cover up the conspiracy to build a world without freedom. Raymond K. Barnes, case analyst at the Supreme Court tampered with evidence from the Supreme Court of the United States by the Pro Se applicant and sent them to Jaime Naranjo-Herrera. This was evidence of a coordinated attack on the liberty of the Pro Se Applicant and the improper use of court rules to prevent the enforcement of United States statutes. This makes Mr. Duggan and Mr. Barns conspirators to the foregoing treasonous activities which form part of the invariable pursuit of the object.

On August 6, 2021, Michael Duggan tampered with an appendice sent to the Supreme Court of the United States in which he re arranged the motion and took out the motion and placed it in the front as if it was a petition. The appendice hand letters from him and Redmond K. Barnes that presented evidence of criminal activity. The page Michael Duggan purported to be the petition clearly has "Exhibit C Motion for relief to the Supreme Court" at the top of the page. This demonstrates that the exhibit was taken out of the document and placed at the front. Some sticky notes were placed on the pages (see Appendix E) to purport that wording in the

content of the motion that referred to extraordinary writs were making the document and extraordinary writ. The Motion gave the reasons why the 10th circuit should have granted the motion, but the Pro Se Applicant predicted punishment from the 10th circuit as the reason that the Supreme Court should grant the motion. The 10th Circuit punished the Pro Se Applicant as expected.

August 13, 2021 Judge Lewis T. Babcock dismissed the motion, which was incorrectly filed by the clerk's office as civil for lack of jurisdiction. Judge Babcock "liberally construed" sections of the motion instead of taking the plain reading of the document in which its meaning was plain and very obvious. Judge Babcock ignored the numerous references to the convention against torture as justification in concert with 18 U.S.C. § 3771, and allegations of treason.

On August 25, 2021 a Deputy Clerk known as A. K. From the United States District Court for the District of Columbia purported to reject the complaint under article 13 of the Convention against Torture and the associated motion for relief pursuant to 18 U.S.C. § 3771 for having no filing fee or that the document does not comply with the Federal Rules of Civil procedure when the cover clearly states that it is a criminal complaint pursuant to artlicle 13 of the Convention against torture and Rule 3 of the Federal Rules of Criminal Procedure. The actions of the Deputy Clerk far exceeded the scope of their position, and in the process flagrantly violated article 13 of the Convention against Torture and becoming complicit to the foregoing treasonous activity.

On August 30, 2021, the Pro Se Applicant recieved a Covid test and was advised by the nursing staff at the Aurora ICE Processing Center that he was to recieve a rapid Covid test the next day as it is required by where he is going. The Pro Se Applicant was not informed by ICE as of the time of this writing at 11:29 am August 30, 2021 as to the location he is to be moved to.

On August 30, 2021 The Pro Se Applicant spoke with his mother and had advised him that Emily Price from the Federal Court of Canada had called him and advised that there was a case management hearing scheduled for September 1, 2021 apparently the same time that the rapid Covid test is to be administered to him to move him to a place that is yet to be determined. The Pro Se Applicant was moved by ICE in April of 2021 on the date that a case management hearing was scheduled by the Federal Court of Canada, which demonstrates a pattern of conspiracy as it is but a repeating of events that took place in April

Officer Brian Scott and the officer who is now known to be Officer Brian Biesemeyer were the two CBP Officers responsible for the torture of the Pro Se applicant. Even in the sworn statement taken by officer Biesemeyer it can be seen that the answers are not consistent. The first paragraph of the sworn statement demonstrates consistency, however the last paragraphs are not consistent with the first, which suggests misrepresentation. When examining the written statements of the Pro Se Applicant it becomes abundantly clear that officer Biesemeyer intentionally falsified the statement and a person who was fearful of being killed by the officer would offer little resistance when their rights were being violated.

The Petition was unconstitutionally suspended by Gordon P. Gallagher after that he read that the Pro Se applicant was being subjected to torture, obstruction and other crimes. The Magistrate Judge abused his position and no reasonable person can conclude that a judge should not entertain a petition for a writ of habeas corpus tied to torture, obstruction of reporting treason and other federal crimes. The judge has an obligation of allegiance to the United States of America and is duty bound to allow a person to present evidence of treason unmolested. The only reasonable conclusions for a judge to take such action is either he is grossly incompetent which is highly unlikely, he has suffered some sort of mental break down which is remotely possible seeing he is fulfilling other duties in his official capacity or he has some connection to the events contained within, he seeks to build a world without freedom—solve et coagula as the Masonic adage teaches

The Pro Se Applicants was not advised of the message sent from the Federal Court of Canada until June 8, 2021 after he submitted a kite to the facility asking why he was not given the message. There were other kites and grievances and appeals submitted to the facility and ICE regarding this matter. Since there is an unwarranted obstruction of justice, and torture occurring, it is the obligation of the Court to intervene in the matter. Attached to this motion is a copy of the Federal Court of Canada matter in which ICE is a respondent and under no circumstances should the Pro Se Applicant be detained by a defendant in the matter as the risk for abuse runs high and there has been clear demonstration of criminal behavior directed towards the Pro Se Applicant.

On May 22, 2021 the Pro Se Applicant sent in a grievance to the Aurora ICE Processing Center in Aurora, Colorado requesting that he be granted access to his flash drives to work on his case.

On May 25, 2021 the Pro Se Applicant spoke to ICE officer Alexander about some issues arising from his detention and that he was suing ICE, that they declined to send lawyers to the matter and that they have forfeited any right to defense as a result, that he was attempting to seek relief from torture of his infant daughter and that the information on the flash drive was critical to that as it is a violation of the torture convention for an infant child to be punished for his political opinion and that it has caused both of them severe mental pain and suffering and that they are still enduring that pain and suffering and that withholding the flash drive to continue her torture is not a lawful sanction and it is in fact torturing him. Alexander admitted that his infant daughter should not be punished.

When the Pro Se Applicant spoke to ICE Officer Alexander on May 26, 2021 she refused to allow him to have a flash drive that had evidence of torture, terrorism and the Invariable Pursuit of the Object which includes treason.

Further conversations with ICE have not resulted in any positive results and as of June 9, 2021 at 3:48 pm the Pro Se Applicant has not been given access to the materials that he needed for court on June 10, 2021 for a motion consisting of over 5,000 pages to be argued over a duration of 4 hours. Nor was he been scheduled for access to a computer or a phone for the hearing. The Pro Se Applicant has been trying to put together a case to submit to a United States judge that outline the

Invariable Pursuit of the Object which includes without limitation, terrorism, torture and treason. The Pro Se Applicant was informed that ICE's and GEO's policy are the reason why those egregious crimes have been hindered from being reported. The Pro Se Applicant in a conversation with Assistant Warden Ceja on Friday June 4, 2021 offered to pay for any damages to the computer in the law library in order to have access to the materials to report the criminal activity, and the kite submitted by Ceja came back later that day stating that their policy does not permit an outside flash drive to be placed on a computer, even though it was written on the kite that the purpose of using the flash drive was to present evidence of federal crimes to a United States judge. The denial of giving the flash drive was clear cut obstruction of justice and made the persons who were impeding the Pro Se Applicant from doing his lawful duty conspirators and accessories after the fact to the forgoing crimes.

It is indisputably clear that the Pro Se Applicant is being obstructed from pursuing justice, and it is highly unethical to place a Plaintiff in the custody of a defendant. The Pro Se Applicant is being tortured in the custody of a defendant in the matter.

It is indisputably clear that the obstruction of justice makes the parties to the obstruction accessories after the fact to the forgoing criminal activities mentioned in the statement of claim for T-1404-20 in the Federal Court of Canada. The obstruction is preventing the Pro Se Applicant from testifying and providing evidence of terrorism, torture, treason and numerous other violations in Canada. The obstruction and torture is in violation of international treaties and allowing

terrorists to go unpunished, especially ones who have committed acts of terrorism against a United States citizen, Robert A. Cannon. The United States has an obligation to investigate crimes like this against a United States citizen.

On January 4, 2021 Robert A. Cannon was arrested attempting to enter the Cannon building in Washington D.C. attempting to deliver a petition to congress for the redress of grievances. It contained information that outlined the Invariable Pursuit of the Object and evidence to support the claims of rights for the Metis in the United States of America. He was arbitrarily, unconstitutionally detained preventing him from presenting evidence of the Invariable Pursuit of the Object that is tied to the mismanagement of the COVID emergency, which is a massive assault on the liberties of all Americans and people worldwide. The COVID report contained in Appendix B was part of the Petition. The COVID report contains evidence that criminally negligent guidelines are being used for aerosol generating medical procedures. This information is being placed into the hands of incompetent persons who are then not taking proper measures to ensure the health and safety of persons.

It is indisputably clear that there has been a pattern of punishment towards the Pro Se Applicant and his daughters in the judicial system in Canada and the United States, including a severe level of judicial interference in the Supreme Court of the United States by rogue elements which includes without limitation Clara Houghtelling, Michael Duggan and Redmond K. Barnes. The foregoing treason and masonic conspiracy which includes terrorism and shielding the rogue agents of

Innovation Credit Union located in Saskatchewan, Canada who are co-opting a legitimate financial institution to fund the Invariable Pursuit of the Object. This includes judges in the Court of Queen's Bench for Saskatchewan, and the Court of Appeal for Saskatchewan participating in and shielding mortgage fraud. The Court of Appeal for Saskatchewan has openly declared that the Constitution of Canada has no validity there and are in open rebellion against Canada in a blatant act of rebellion. The Court of Appeal for Saskatchewan declared that children are not persons and should not be afforded the Privilege of the Writ of Habeas Corpus. This Invariable Pursuit of the Object can be traced through multiple courts in Canada and the United states beginning with R.W. Elson's orders which were used to cover a terrorist attack that victimized a United States citizen, making the masons enemies of the United States of America, as it was a masonic conspiracy that executed the July 23, 2020 terrorist attacks in North Battleford, Saskatchewan. The Invariable Pursuit of the Object can then be traced through the Federal Court of Canada, OWZW, and Association of Professional Engineers and Geoscientists of Saskatchewan when Virgil Thomson of OWZW and Michael Griffin of APEGS influenced masonic conspirator Justice Barnes to commit perjury and blatantly violate the Convention Against Torture. It can be followed through to the Court of Appeal for Saskatchewan with multiple judges torturing Dale and Karis and punishing Robert A Cannon. All 11 judges have tortured, punished, participated in or shielded mortgage fraud or demonstrated extreme prejudice. The entire Court of Appeal for Saskatchewan is corrupt and the Registrar Amy Groothius and her

assistants have consistently attempted to defraud the Pro Se Applicant and obstruct justice and shield mortgage fraud and torture the Pro Se Applicant. Justice J. A. Schwann deliberately withheld critical evidence that demonstrated that obvious mortgage fraud that was perpetrated by the following parties in the lower court without limitation; Kimberley A Richardson, Clifford Holm, Lisa Silvester, Patricia J Meiklejohn and Justice B.R. Hildebrandt. The district court of Nevada Judge Jennifer Dorsey punished the daughter of the Pro Se Applicant when she lied in her orders and ignored issues that were raised in the Habeas Corpus matter. It was a continuation of the Immigration Court Judge Glenn Baker who dismissed her claims of credible fear when there is substantial evidence to demonstrate that there was torture based on political opinion of the Mismanagement of the Covid emergency. Judge Baker also committed perjury in his orders issued to deny her credible fear in the face of overwhelming evidence and discounted that mental pain and suffering forms a part of the torture convention and improperly applied the law in order to torture her by sending her back to a place where she would have been tortured or killed because of her political opinion on the mismanagement of the Covid emergency.

There has been- a continued persecution of the Pro Se Applicant when he had to flee for his life after the RCMP by the Attorney General of Canada presented evidence that is a confession of torture, terrorism and the Invariable Pursuit of the Object and argued against the Pro Se Applicant that he should not receive injunctive relief in the Federal Court of Canada. The Pro Se Applicant also

discovered that there was a damning affidavit sworn into the Court of Queen's Bench for Saskatchewan that demonstrates clear cut mortgage fraud that was used by the court to justify transferring his title without him being present of notified. The denial of the Privilege of a Constitutional Writ of Habeas Corpus demonstrates the treasonous actions of the court.

This is all in desperation to save the finances of their terrorist operations. The judiciary in Canada has been desperately trying to protect the rogue agents of Innovation Credit Union who are integral to the Invariable Pursuit of the Object. The invasion by infiltration from the Province to the North by those who adhere to the masonic adage Solve et Coagula that desire to build a world without freedom is the greatest threat to the United States of America as outlined by the Jesuit affiliated Carlo Maria Vigano.

With the delineation of the Invariable Pursuit of the Object that has manifested itself in the lower courts, and in Canadian courts, it is unreasonable to assume that the Pro Se Applicant will receive judicial impartiality when there is ample opportunity for the masonic conspirators to bury the matter and to continue to torture and potentially murder the Pro Se Applicant.

## MATERIALS RELIED ON

1. Appendix A (attached to this motion)

2. Appendix B Motion for Relief – Robert A Cannon District Court of Columbia

3. Appendix C Colorado District Court evading service

4.  Appendix D Columbia District Court

5.  Appendix E Michael Duggan Obstructing Justice

6.  Appendix F More Obstruction

7.  No. 20-1815 Petition for Writ of Certiorari at the Supreme Court of the United States served and filed to this Court.

8.  The contents of 1:21-cv-01418-GPG

9.  The contents of 1:21-cv-01618-GPG

10. The contents of 1:21-cv-01794-GPG

11. The contents of 1:21-cv-02183-GPG

12. The contents of 1:21-cv-02208-GPG


# RELIEF SOUGHT

1.  Release from ICE custody on his own recognizance

2.  A criminal investigation into the allegations brought forward by the Crime Victim

3.  A civil rights criminal investigation into the allegations brought forward by the Crime Victim

4.  An order restraining Officer Blevins from interfering with, intimidating, coercing or otherwise harassing the Pro Se Applicant

5.  An order for the Attorney General to authorize an investigation into treason, torture, obstruction of justice and the mismanagement of the COVID emergency

6. An order to investigate the transnational terrorists in Canada linked to the Virgil Thomson and OWZW

7. Restraining order from any agent of ICE until the determination of an investigation

8. An order for the Immigration Court in Aurora Colorado to supply the hearing from the Crime victim Dale J. Richardson on July 13, 2021 to the victim and the Court,

9. An order restraining DHS from attempting to repatriate the Crime Victim until the determination of an investigation

I.   **The Right to the Issuance is Clear and Indisputable**

Article III, Section 3, Clause 1 of the UNITED STATES Constitution defines treason and, the crime of treason is so heinous because it threatens the very foundation of the UNITED STATES OF AMERICA, the Inalienable Rights to Life, Liberty and the Pursuit of Happiness. This is the purpose of the Government of the United States to protect the rights of the people from the imposition of absolute Tyranny. When the government is formed that speaks for the people, that the people elect representatives to administer and enact its laws, it is *"WE THE PEOPLE"* that speak. The people of the UNITED STATES OF AMERICA are those who govern the nation through the duly elected government by the majority of the person and anything that threatens the will of the people from being carried out is treason against the UNITED STATES OF AMERICA.

Amendment VIII of the UNITED STATES Constitution guarantees that cruel and unusual punishments not be inflicted, and an unconstitutional detention whose arrest at the border was to punish the Pro Se Applicant for fleeing torture, terrorism and aide the enemies of the UNITED STATES and prevent the Pro Se Applicant from presenting evidence of treason to the Supreme Court of the UNITED STATES. This formed a part of the Invariable Pursuit of the Object that is the Imposition of Absolute Tyranny in the UNITED STATES and worldwide.

The right to not be tortured is an inalienable right under the United Nations Convention against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, and the torture must be stopped immediately and cannot wait for any delay of any kind. Any delay in arresting the torture is a clear violation of the Convention. Any statement determined that was obtained of torture cannot be used in any proceeding other than to prove the person was tortured. There is compelling evidence that the statement was obtained by torture under the convention by the CBP officers. It is also clear that Blevins intimidated and coerced the Pro Se Applicant using a lie which is not a lawful sanction thereby torturing the Pro Se Applicant.

Amendment V of the UNITED STATES Constitution guarantees due process, and the Pro Se Applicant has been subjected to numerous instances of obstruction of justice at the Aurora Ice Processing Center in Aurora Colorado. The facility is owned and operated by GEO Secure Services. Officers of ICE and GEO have refused to give the Pro Se Applicant access to his evidence of federal crimes that he intends

to present to the Supreme Court of the UNITED STATES. Policy was cited by numerous ICE and GEO officers to justify the obstruction of justice. They hindered the Pro Se Applicant from presenting evidence of the Invariable Pursuit of the Object which includes without limitation, torture, terrorism and treason, and thereby becoming conspirators to the forgoing Invariable Pursuit of the Object.

18 U.S.C. § 3771 provides rights of the crime victim to be protected from the accused and since the Pro Se Applicant is being held by persons who have continually tortured and obstructed him, he has a right to be protected from them. The District court of Colorado, the Court of Appeals for the 10th Circuit, the Immigration Court have all failed in their duty to protect the Pro Se Applicant from harm and took deliberate steps to place him in a position to be further tortured by Officer Blevins and to further the obstruction of both the Pro Se Applicant and UNITED STATES citizen Robert A. Cannon from reporting treason. Given the public importance of a crime of the severity of treason, it is indisputable that the first witness to treason needs to be protected from negative consequences of his desire to report treason. If he is not protected it demonstrates treasonous intent as no reasonable person would conclude that a person should remain in civil detention to obstruct the reporting of treason.

As a UNITED STATES judge, Lewis T. Babcock had an obligation to overlook any such deficiency and examine forthwith the documents that purported federal treason. Federal treason is the worst crime that could be committed in the UNITED STATES and no reasonable person would conclude that purported rule contravention

would be a justifiable reason to dismiss evidence that was alleged to substantiate treason. That is using the rules of the court to allow those who commit treason to go unpunished. The judge used his position to obstruct justice and in doing so committed an overt act of treason. In addition to this he deprived the Pro Se Applicants of rights pursuant to 18 U.S.C. § 242 and his overt acts were party to 18 U.S.C. § 241. The Motion for relief pursuant to 18 U.S.C. § 3771 was declared moot. He purported that the motion "does not include any claims, factual allegations or request for relief." With that statement UNITED STATES judge, Lewis T. Babcock committed perjury. He out right lied and there is a copy of that motion for relief sitting as evidence with a petition for writ of certiorari and the orders will be forwarded to the Supreme Court as well to demonstrate the gross patter of suppression of rights towards a black alien who is attempting to assert constitutional rights. The denial of the torture complain under the Convention against Torture does allow for the prosecution of 18 U.S.C. § 241. *Treaty with foreign power was supreme law of land; Congress could provide punishment for its infraction on deprivation of or injury to right secured by it, as in case of ordinary law. In re Grand Jury (1886, DC Or) 11 Sawy 522, 26 F 749.*

The continued actions of Michael Duggan delineates a determined effort to deprive the Pro Se Applicant of rights who is both an Alien and Black. Even after the document was properly filed on June 23, and docketed on June 29, 2021 Michael Duggan separated the motion from the petition to prevent the Pro Se Applicant from gaining his freedom and further subjecting him to torture and hindered the

presenting the evidence of treason to UNITED STATES judges. Michael Duggan

demonstrates that he is acting as a part of a conspiracy to prevent the enforcement of

a UNITED STATES Statute and it is reasonable that there is a criminal civil rights

violation pursuant to 18 U.S.C. § 241. *18 USCS § 241 does not require that any overt*

*act be shown. United States v Morado (1972, CA5 Tex) 454 F.2d 167, cert den (1972)*

*406 US 917, 32 L Ed 2d 116, 92 S Ct 1767.* Even though an overt act does not need to

be shown, there are many instances of overt acts of conspiracy when the district

court mailed the motion served with the petition for writ of certiorari to the Supreme

Court and the Michael Duggan mailing both the motion and the envelope that the

Court sent it in to the Pro Se Applicant, and the actions of all of the Judges and

clerks that read the petitions and failed to see clearly delineated words or statutes in

order to deny the Pro Se Applicant of rights. Based on this information the Pro Se

Applicant expects punishment from the District Court in Montana.

The Convention against Torture provides the necessary jurisdiction to the Court to

hear the matter and take action, and in ignoring the mention of invoking the

Convention against Torture demonstrates that there are rogue agents within the

District Court of Colorado that are complicit to torture. Regardless of what form the

document is received at the court, a complaint of torture must be heard, and a person

complaining of torture and being subjected to numerous crimes is not a civil matter,

and swift and immediate action needs to be taken to investigate the claims of torture.

Since there are also allegations of conspiracy to commit treason and

other heinous crimes it is in the public interest to allow this matter to proceed. The
Pro Se Applicant has the right not to be tortured


## II.    The Relief is Appropriate Under the Circumstances

The Relief is to remove the effects of torture and other egregious crimes that the Pro
Se Applicant is suffering because of the actions of the agents of ICE and Aurora ICE
Processing Center's contribution to the Invariable Pursuit of the Object. Unless the
Court believes that torture and other heinous crimes that are part of the Invariable
Pursuit of the Object should go unpunished. The Pro Se Applicant was deprived of
his liberty for the sole purpose of hindering him from presenting his case of treason
and other federal crimes. He has been under severe persecution in Canada and now in
the UNITED STATES for his opposition to the Invariable Pursuit of the Object which is
manifested in the mismanagement of the COVID emergency. Furthermore, the Court
should not give any advantage to those parties who dare to commit treason against
the United States of America and should afford the Pro Se Applicant the utmost
opportunity to present his evidence of treason without any hindrances. Since there is
a history of punishment by numerous courts in Canada and the UNITED STATES when
presented with this evidence regarding serious criminal actions and gross corruption
in government agencies and the courts, it is reasonable to assume that punishment
will occur if not checked and that the only reasonable chance for the Pro Se Applicant
to get justice is through the Court's

powers. There is a high probability of torture and potentially death for the Pro Se Applicant without the exercise of the powers of this Court.

Officer Jones covered for the crimes of Officer Blevins and the CBP officers and suggested that it was policy for the actions of Blevins. There has been a continued punishment of the Pro Se Applicant by the officers of ICE and they should not be rewarded for obstructing justice and torturing the Pro Se Applicant. Every person that the Pro Se Applicant attempted to report the crimes to is responsible for the latest act of torture and are conspirators after the fact to a litany of crimes that are part of the Invariable Pursuit of the Object spoken of in the Declaration of Independence.

On August 2, 2021 Magistrate Judge Kristin L. Mix demonstrated that she was a conspirator to prevent the enforcement of a UNITED STATES statute, when she acted like she could not clearly read the statutes that were listed in the Jurisdiction paragraph. The Convention against Torture is not a civil matter and when someone is alleging that they are being tortured, any civil delay is furthering the torture of a person. Furthermore it was designed to protect persons in custody of public officials from abuses that are prevalent when persons are detained. This Judge knew what she was doing. *Conspiracy to altogether prevent enforcement of statute of United States is conspiracy to commit treason by levying war against the United States. Bryant v. United States, 257 F. 378, 1919 U.S. App LEXIS 2212(5th Cir. 1919)* the actions of Magistrate Judge Mix and Gallagher in concert with the person in the Clerk's office demonstrates a conspiracy to prevent the enforcement of a UNITED

STATES statute. The continued detention of the Pro Se Applicant and Jaime Naranjo demonstrate that force is being used to prevent the enforcement of the statute as well.

Furthermore, force is not required if the conspiracy is detected early. *The Government contends that, but for the timely interruption of the conspiracy by the apprehension of its leaders actual resistance would have come about. The greater part of the evidence relied upon by the government to establish the conspiracy related to facts which occurred before the passage of the selective Draft Act. United States. Bryant v. United States, 257 F. 378, 1919 U.S. App LEXIS 2212(5ᵗʰ Cir. 1919)*

These observed actions point to treasonous activity and it warrants investigation, however, it is unreasonable to assume that the rogue agents of the District Court of Colorado would allow the Pro Se Applicant the ability to argue a matter before it to investigate itself for corruption. For this reason this motion is being supplied to other parties and Courts to consider. Since the crime of treason requires two witnesses to the overt act of treason, it is a unique crime as to prevent the reporting of treason, only one of the witnesses need be obstructed, and there can be no conviction for treason. It is abundantly clear that the witness who is the white American is being obstructed primarily by the torture, persecution, and severe obstruction of the Black Alien from Canada. It is a reasonable assumption that a white American would not be subjected to the same type of obstruction as the Black man as it would raise suspicions of white persons to the danger to the country.

Based on the uniqueness of this crime requiring two witnesses, it is the contention of the Pro Se Applicant that crimes in two locations for obstruction occurs as the obstruction of the one witness, obstructs the other because there can be no conviction on treason on the basis of one witness. Therefore the crimes committed to obstruct the pro Se Applicant have also obstructed Robert A. Cannon in every State that he was physically present in. The Pro Se Applicant submitting a motion for relief to the District Court of West Texas based on this interpretation for a Judge to decide based on precedent using a plain reading of the law if the motion for relief can be filed by the Pro Se Applicant in the District Court in West Texas to investigate the obstruction of treason.

From the COVID report in the appendices for No. 20-1815 in the Supreme Court of the UNITED STATES it can be seen that criminally negligent guidelines are being used for infection control in both Canada and the United States. This makes the mismanagement of the covid emergency a serious problem and that intimidating and coercing the public using criminally negligent guidelines enters onto the realm of terrorism, both in Canada and the United states. The mismanagement of the COVID emergency was used to commit acts of terrorism in Canada against the Pro Se Applicant, his daughters and UNITED STATES Citizen Robert A. Cannon who is physically present in Texas. The explanation can be read in the attached Appendices in the motion that was obstructed by agents of Ice and the Aurora ICDE Processing Center.

III.    As a Christian there is an obligation to keep the laws of God.

The Commandments in Exodus 20 and Deuteronomy 5 forbids from bearing false witness (Lying);  Ecclesiastes 12:13, 14 keeping the commandments are the whole duty of man;  and Romans 13 gives explicit orders to obey the civil authorities in so far that they do not violate the laws of **GOD**.

Since the Bereans were praised for their diligent study to determine the truth so too must a Christian diligently study to ascertain what is TRUTH.  When PRO SE applicant advised ICE officer Blevins that he was going to contact his consulate to find out what his requirements were, he was fulfilling both his civil and religious duty.  It was to ensure that he was complying with the law.  Officer Blevins is not competent in understanding Canadian law, and not allowing the PRO SE applicant time to contact his consulate to determine for himself what his duty was for himself was a gross violation of his rights.  Then giving the warning for non-compliance because he wanted verification for himself from the consulate that the actions were in compliance with the law was a blatant attempt to compel the conscience of the PRO SE applicant.  The PRO SE applicant takes upholding the law seriously as the Bible states every word and action will be called into the judgement.  The PRO SE applicant was tortured because he upheld the law.  The PRO SE applicant has no issue following the law and when he is directed to do something, he is obligated to ensure that what he is doing is in accordance with the law.  There is a clear warning on the first page of the passport application outlining the penalties for

false, misleading statements or omissions on the application. Next, there are solemn declarations on the application which if signed would cause the PRO SE applicant to lie. There is no consequence for officer Blevins if the PRO SE applicant gets in trouble for the application. Officer Blevins did not ask if the PRO SE applicant is in contact with his embassy to get correct instructions. He abused his power, and used intimidation and coercion- the threat of imprisonment to get the PRO SE applicant to violate his conscience. A Christian gives obedience to the law from intelligent voluntary submission to it as it is in harmony with **GOD's** will. A Christian cannot submit to anything that violates **GOD's** law. For this reason a Christian must understand what he or she is doing to ensure that any action that they take does not violate the law of **GOD**.

In taking away the opportunity for the PRO SE applicant time to verify the lawfulness of the officer's request, and employing threat of force to get him to compel it he executed one of the basest of all crimes and demonstrated actions that strike against the very foundation of the Constitution of the United States and the Declaration of Independence. The tact that the PRO SE applicant is black and has been treated in a manner that no white American professional would be treated brings a compelling civil argument, United States Magistrate Judge Gordon P. Gallagher demonstrated by his actions that he adheres to the racist Masonic ideology of Albert Pike that the white race alone is fit to rule in America and the only race that will. This demonstrates a two tiered system of caste in America, namely the white Americans and the rest. At the very bottom of the second caste is

the blacks, whose history demonstrates this to be true. It is because of this Masonic ideology that CBP Officer Scott told the PRO SE applicant that he would not do business in America that the Department of Homeland Security ignored repeated complaints of torture and obstructed him from presenting evidence of treason.

The treatment of Robert A. Cannon, a white American who is the second witness to federal treason, clearly demonstrates the massive disparity of treatment between whites and blacks. Officer Blevins would never attempt to compel the conscience of a white American who was the first witness to federal treason in the manner in which he obstructed the PRO SE applicant. The refusal to allow the PRO SE applicant the right to complain of torture and other rimes has a lot to do with his race. No reasonable person could conclude that a white professional would ever be subjected to this level of rights deprivation on United States soil. The black Pro Se Applicant has faced the brunt of the overt obstruction in this matter.

The courts have continually shut out a black from seeking protection from the law. The CBP Officers tortured him and refused to take the evidence to deny the PRO SE applicant the scant protection afforded by the immigration laws. If it were possible the would have shot the PRO SE applicant, with the track record of unarmed black males being killed by law enforcement this is a reasonable assumption. This is made a more compelling argument when taking into account that the PRO SE applicant possesses evidence that incriminates a number of agents of the Department of Homeland Security in criminal activity which includes without limitation, torture and treason.  Officer Blevins has motive to commit crimes

against the PRO SE applicant as he advised Blevins that his country will execute him for treason.

If the PRO SE applicant is allowed to present his evidence of treason with the second witness UNITED STATES citizen Robert A. Cannon prosecution is the inevitable result for Blevins and the other agents of DHS who continually obstructed the PRO SE applicant and Robert A. Cannon from reporting treason. With applications for relief going out to District Courts in Montana, Colorado and D.C., the PRO SE applicant is expecting punishment in every one of those courts.

If punishment occurs in those courts, it demonstrates the wide spread corruption and compelling evidence to only add to the compelling evidence of treason already compiled by the PRO SE applicant. Treason of this magnitude necessitates conspiracy, as it is impossible for it to occur without an active conspiracy. Every part of the treasonous activities no matter how small is are active participant in treason. There are no small actors in treason.

With the magnitude of the crime of treason, every opportunity must be afforded to potential witnesses to bring evidence forth of treason or it is giving aide and comfort to the enemies of the UNITED STATES. No reasonable person could conclude that any persons purporting treason should be denied the right to provide evidence of the treason, especially when they have compelling evidence that they were tortured and persecuted as a result of that evidence. Immigration law is being used to shield the treasonous actions of the Masonic conspirators as it is their ideology that fuels it. Whether they be actual Masons or adherents to their ideology it matters little as

they are acting from a set of beliefs promulgated by them. They seek to build a world without freedom, and promote racial divisions and inequality.

IV.    **The writing is on the wall for those who seek to build a world without freedom.**

The term "the writing is on the wall" comes from the bible. It is derived from Daniel chapter 5. When Belshazzar was profaning the instruments of **God's** temple in a scene of drunkenness and debauchery, a bloodless hand wrote the words **MENE MENE TEKEL UPHARSIN** on the wall, in a language that was unknown to all the participants of the feast. Belshazzar's knees were knocking together in fear when he saw the writing as he sensed something ominous had taken place. Daniel was finally summoned to interpret the words that had been written on the wall. He told the king the meaning of the words,

**MENE – God** has numbered thy kingdom and finished it,

**TEKEL** – Thou art weighed in the balances and found wanting,

**PERES** – Thy kingdom is given to the Medes and the Persians.

That night the bible and history tells us that Babylon was conquered by Cyrus. In Daniel chapter 11, a prophecy is given about the King of the North and the King of the South. The king of the North represents the conservative elements of the papacy championed by the Jesuits and those aligned with them, and the king of the South represents the secular humanistic atheist power championed by the masons. The

king of the south can be brought to light as to its identity from Revelation chapter 11 and the term that is used, the time of the end. From a study of Daniel it can be ascertained that the time of the end begins in 1798. And with the description of the persecution of the protestants described a few verses earlier it can be easily determined that the papacy is the King of the North, in addition to the identifiers in Daniel chapter 2, 7, 8 and revelation 13, 17. History tells us that Napoleon conquered Rome and took the pope into captivity in 1798, just as the bible predicted almost 2000 years earlier in Revelation and the warring with the papacy in Daniel occurring in 1798 as well. The portion of the prophecy that needs special attention is the part that states that the king of the North will come at the king of the South like a whirlwind. Dan 11:40 and at the time of the end shall the king of the south push at him: and the king of the north shall come against him like a whirlwind, with chariots and with horsemen, and with many ships; and he shall enter into the countries and shall overflow and pass over.  The king of the north is coming to subjugate the king of the south and the bible predicts it and the book of Daniel has never been wrong in any prophecy, neither has any other part of the bible for that matter. With this knowledge it is reasonable to believe that the king of the south (the masons) are about to suffer a crushing defeat. Since this current actions taking place around the world with the covid pandemic do not square with bible prophecy, it is reasonable to assume that it will miserably fail since it is impossible for **God** to lie. Even archbishop Carlo Maria Vigano agrees that the covid will fail. When a conservative catholic archbishop and a Seventh-day Adventist agree on something it

is noteworthy. It is inevitable that the masons will be held responsible for the crimes outlined in this document and many others. When the masonic agents in the courts and many other areas continue their treasonous activities against their respective countries and most importantly against heaven, **God** himself will step in and interpose. **God** is strengthening the king of the north to hunt down the masons. **God** has decreed it and it will happen as he says.

V.    **The Convention against Torture and 18 U.S.C. § 3771 provides enough jurisdiction for the District Court to take action.**

Article 2 of the convention against Torture provides reasonable grounds for the action to be taken to protect the Pro Se Applicant from the person he is making a complaint of torture against.

Article 2

1. Each State Party shall take effective legislative, administrative, *judicial or other measures to prevent acts of torture* in any territory under its jurisdiction.

2. No exceptional circumstances whatsoever, whether a state of war or a threat of war, internal political instability or any other public emergency, may be invoked as a justification of torture

Article 13

Each State Party shall ensure that any individual who alleges he has been subjected to torture in any territory under its jurisdiction has the right to complain to, and to have his case promptly and impartially examined by, its competent authorities. *Steps shall be taken to ensure that the complainant and witnesses are protected against all ill-treatment or intimidation as a consequence of his complaint or any evidence given*.

When taken in light of the torture convention, it is reasonable for the person who is making a complaint of torture to be protected from the torture. Leaving a person in the custody of those who he has alleged has tortured him after there is a documented pattern of punishment towards the person, is a violation of the Convention against Torture and Judge Babcock, deliberately misconstrued the motion and omitted certain parts in order to claim lack of jurisdiction. When taken in concert with the convention against torture, there was an obligation to prevent further acts of torture, and the Judge did not allow any such tests as to whether there was torture to be made. As there is a long and documented history of torture of the Pro Se Applicant, by agents of DHS and other parties in the United States and Canada, and that evidence was presented to the Court. The Judge refused to consider the evidence of the torture complaint and the Court deliberately misconstrued the motion as a civil matter to shut out the evidence of torture, conspiracy to commit treason, terrorism and other numerous crimes. This denied the Pro Se Applicant his right to complain and circumvented the Convention against Torture and 18 U.S.C § 3771 and prevented the enforcement of a United

States statute. Since there were more at least three persons involved in preventing the

enforcement of 18 U.S.C § 3771 and the Convention against Torture, it demonstrates

conspiracy. This is another overt act that demonstrates conspiracy to commit treason.

VI.    **Judge Babcock misapplied 18 U.S.C. § 3771 in light of the Convention against**
       **Torture which gives enough jurisdiction for the District Court to take action.**

The PRO SE applicant comes to the Court to receive help. He alleges that he has been

tortured and presents a lot of evidence to demonstrate that he has been tortured and

persecuted in the United States and Canada. He has evidence that actors in Canada

and the United States are working in concert with each other, which makes these

crimes trans-national in nature. The PRO SE applicant is also alleging that he has

been tortured and is currently being obstructed in the facility in which he is in, and

the Judge continually hammers the PRO SE applicant who was intentionally placed

at a disadvantage by the public officers who tortured him using the color of authority

of the Department of Homeland Security. In light of this and the numerous volumes

of evidence, the Judge decides to ignore all the evidence that the PRO SE applicant is

being tortured and subjected to numerous crimes and that American state actors are

complicit to the torture of an infant child and in striking down the motion by the

PRO SE applicant setting precedent that American state actors have the right to

torture black aliens on American soil with impunity, and that they have the right to

be complicit to the torture of a black by-

racial infant. Even worse is that their actions to restrict the PRO SE applicant is restricting the liberty of an infant child in Canada. Even worse than this is a deliberate effort to deny the reporting of federal treason by attempting to unlawfully return the first witness to treason to a high probability of torture. This action will allow those who commit treason against the United States to conti9nue to invariably pursue the object. The Judge should have liberally construed the grounds as a complaint to have arrest warrants issued, and released the PRO SE applicant. Since there was no proceeding, and the provision gives the crime victim the right to assert the rights listed in section a, the obstruction on the part of the rogue agents of DHS, prevented the PRO SE applicant from making any meaningful complaint. Furthermore, the case cited by the Judge does not take into consideration the persons who are perpetrating the crimes to be agents of the government. When the persons accused of crimes are part of the government that decision leaves no protection from unjust government and is taking case law to sanction despotism, and it must be discarded as the circumstances under which that decision was made to not apply here. The decision that was made did not comprehend if the government was the accused and preventing any prosecution, or hindering a matter from appearing before a grand jury for an indictment. With the sheer volume of evidence supplied by the PRO SE applicant, a reasonable person would conclude that if that kind of evidence was presented for an indictment or chances, against a non-government actor there would have been an indictment, change and a conviction. However, since there are corrupt elements in the

government hindering the reporting of the crime the case law does not apply. The Judge is depriving a person of rights to permit those who invariably pursue the object to continue their course with impunity. The actions of the Judge demonstrate despotism, and a desire to build a world without freedom. There are allegations of conspiracy to commit treason, and obstructing a person who is desperately attempting to present evidence of it and other federal crimes to a United States Judge is in and of itself treason. Treason is the worst crime that can be committed and one of the main reasons the PRO SE applicant came to the United States was to report it. It is in the public interest to allow him reasonable opportunity to report it in conjunction with the 2nd witness, United States citizen Robert A. Cannon. No reasonable person would conclude that a person should be kept in civil detention and hinder presenting evidence of treason.

Furthermore, an oral hearing is necessary for the PRO SE applicant to present his case. There has been a deliberate wresting of the words of the PRO SE applicant to prevent him from stating his claims. It is clear that the PRO SE applicant has made his claims and they are clear that they are alleging torture and other crimes. The Judge in correctly calls the action a free standing civil action when it is clear that the motion is not a civil action, when it was requested to be filed under, 18 U.S.C. § 3771. The law states that "if no prosecution is under way, in the District Court in which the crime occurred, from a plain reading of the statue, it does not preclude a person from asserting any rights contained in the statute. A Judge" interpretation is what is used to justify Judge Babcock's desire to ignore the facts

and evidence. However, there is a completely different set of facts that distinguish this matter, where the case law in that particular circumstance does not apply. Obstruction of a proceeding is an unreasonable delay because it prevents any proceeding from beginning. The court was supplied with affidavits that outline torture and other unlawful behavior by the agents of CBP. Based on that aspect alone the Judge was obligated under Article 13 and 12 to investigate that there is evidence of torture. The allegations made in the Aurora ICE Processing Center, obligates the Judge to make a criminal complaint of the violations of the connection against torture. The judge used case law and with the help of Magistrate Gordon P. Gallagher, and the office of the clerk to circumvent the convention against torture. The district court is a competent authority and is obligated under the convention against torture to entertain the complaint. Every document that was rejected by the court were violations of the convention against torture. When rejecting the documentation, an isolation of the statutes were unwarranted, as the complaint was warranted by the convention against torture, and the provision made by Rule 3 of the Federal Rules of Criminal Procedure most yield to the unalienable right under the convention against torture which is above any statute in the United States as it is a treatise. Therefore 18 U.S.C. § 3771 interpreted under the context of the convention against torture must be permitted and the right to be protected from the accused must be made manifest as Article 13 of the convention necessitates protection from any ill treatment or consequence from a complaint or evidence given. Amendment VIII also supports the convention against torture. Torture is a

cruel and unusual punishment inflicted, and it is not permissible if a person is not sentenced to prison. It is preposterous to think that torture would not be covered by amendment VIII if it is not then the constitution sanctions torture. However, when interpreted in light of the Declaration of Independence, it is impossible for the Constitution to sanction torture as it is one of the greatest deprivations of liberty and an essential tool for the invariable pursuit of the object. Judge Babcock's written decisions are consistent with a person who invariably pursues the object. The orders represent tyranny and no reasonable person could examine the evidence and come to any other conclusion. No white American would be subjected to such a gross outward display of tyranny without exciting the wrath of the people. Using case law in the manner in which Judge Babcock applied it was like placing a square peg in a round hole. The first consideration is the convention against torture. The question he should have been asking is: Is there evidence that indicates torture? The torture convention gives the right to complain and it is not limited in the language on who it is made to. Nor is it limited to how many times one can complain. Each time a document was improperly filed as civil, it was a violation of the torture convention taking away the Article 13 right to complain. Each time it was dismissed without examining whether someone was tortured was another violation of the convention against torture. The American people would be outraged if they were aware of the gross violations of the convention against torture by the courts and law enforcement on American soil. Especially when the victim is a

witness to treason, and the torture is primarily to hinder and obstruct the victim from properly presenting evidence of treason.

# CONCLUSION

The Complaint and the Relief is the only reasonable course of action for this Court to take. All administrative relief has been exhausted, and obstructed. There is no reason to prevent an investigation into torture. The Pro Se Applicant has presented overwhelming evidence of torture, complicity to torture and a number of serious crimes. This is in the public interest to have these crimes investigated and the public will be outraged if they knew about the actions being taken against the Pro Se Applicant when he was fulfilling his lawful Christian duty. Any failure to process a complaint and investigate and grant the subsequent relief is a violation of the Convention against Torture. The Pro Se Applicant is currently being detained as a punishment by the persons who tortured him at the Sweetgrass, MT point of entry. This detention was also to prevent him from bringing forth evidence of federal treason. Any failure on the part of the Court to exercise the jurisdiction granted in the Convention against Torture will be complicity to torture and an overt act of treason. The Pro Se Applicant has been stripped of his liberty without due process and was tortured in the process. The Pro Se Applicant is being tortured by being hindered from seeking relief for his infant daughter from torture, and subjected to severe obstructions of justice and severe hindrances from bringing evidence of

treason forward. There is an obligation by this Court to allow United States citizen
Robert A. Cannon and the Pro Se Applicant to bring forward their evidence of treason
as the obstruction affecting the Pro Se Applicant obstructs a UNITED STATES citizen
from performing his duty to his country. The Pro Se Applicant is making persistent
efforts to report numerous federal crimes to a UNITED STATES Judge and is being
unlawfully hindered by traitorous elements within the UNITED STATES branches of
the Judiciary and law enforcement. The mere mention of treason and the other
allegations puts the life of the Pro Se Applicant in jeopardy. It is completely
unreasonable to leave a person in the custody for civil detention with the severity of
those allegations. The Pro Se Applicant has committed no crime in the UNITED
STATES, is a director of a Delaware corporation DSR Karis North Consulting Inc.
(DSR Karis North) whose business is the development of critical infrastructure and
his unconstitutional detention is hindering the essential service of DSR Karis North.
The Pro Se Applicant has been subjected to torture by the Department of Homeland
Security and its subordinate agencies and should not be in their custody until the
resolution of the investigations. The Pro Se Applicant has risked his life to report
treason, terrorism, torture and the mismanagement of the Covid emergency, he is a
researcher also in his last year of his Bachelor of Technology and is a Mechanical
Engineering Technologist who is pioneering a field of research. The Pro Se Applicant
is an exceptional individual and deserves his liberty.

Signed this _30_ day of August 2021

Dale Richardson
Pro Se Applicant



Hasler
08/20/2021
US POSTAGE $007.95⁰

PRESS FIRMLY TO

ZIP 80010
011E10674572

**ITY®**
**L**

**FROM:** Dale J. Richardson
Aurora ICE Processing Center
3130 N. Oakland St.
Aurora, CO 80010

s apply).*

ations.

overage.

**TO:**
United States District Court
for the District of Columbia
Office of the Clerk
E. Barrett Prettyman Courthouse
Washington D.C. 20001

CKING #

8332 4252 51

Label 400 Jan. 2013
7690-16-000-7948

CKUP

This packaging is the property of the U.S. Postal Service® and is provided solely for use in sending Priority Mail® and Priority Mail International® shipments. Misuses may be a violation of federal law. This package is not for resale. EP14F © U.S. Postal Service; May 2020; All rights reserved.

**PRESS FIRMLY TO SEAL**





**UNITED STATES POSTAL SERVICE** ®

**PRIOR**
**M A**

■ Expected delivery date specified for domestic use.

■ Most domestic shipments include up to $50 of insurance (restrictio

■ USPS Tracking® included for domestic and many international dest

■ Limited international insurance.**

■ When used internationally, a customs declaration form is required.

*Insurance does not cover certain items. For details regarding claims exclusions see th
Domestic Mail Manual at *http://pe.usps.com*.

** See International Mail Manual at *http://pe.usps.com* for availability and limitations of

# FLAT RATE ENVELOPE
ONE RATE ■ ANY WEIGHT

# TRACKED ■ INSURED



UNITED STATE
POSTAL SERVI

**USPS TR**



PS00001000014

EP14F May 2020
OD: 12 1/2 x 9 1/2

9114 9011 598

USPS.COM